92 P.3d 181 (2004)
151 Wash.2d 728
STATE of Washington, Respondent,
v.
Matthew Glen GOINS, Petitioner.
No. 73177-2.
Supreme Court of Washington, En Banc.
Argued June 26, 2003.
Decided June 10, 2004.
*182 Eric J. Nielsen, Seattle, for Petitioner.
James Morrissey Whisman, Ian Michael Goodhew, King Co. Pros. Aty./Appellate Unit, Seattle, for Respondent.
OWENS, J.
In this case we must decide if a criminal conviction will be overturned when a jury's conviction on a general charge is apparently inconsistent with its answer to a subsequent special verdict. The petitioner, Matthew Glen Goins, was tried by a jury and convicted of second degree assault with the intent to commit indecent liberties. RCW 9A.36.021(1)(e). However, the jury also found by subsequent special verdict that Goins had not acted with sexual motivation. Former RCW 9.94A.127 (1999), recodified as RCW 9.94A.835. Defense counsel did not challenge the apparently contradictory verdicts, and Goins was sentenced according to his conviction. The Court of Appeals affirmed.
Goins claims that the apparent inconsistency of the verdicts requires that his conviction be vacated. In the alternative, he argues that former RCW 4.44.440, amended by Laws of 2003, ch. 406, § 24, can be applied to criminal cases as well as civil, thereby voiding his assault conviction.
We have previously established that verdict inconsistency does not require that we vacate a guilty verdict. We should not second-guess the jury or its lenity since the evidence presented at trial was sufficient to sustain the jury's conviction on second degree assault. Furthermore, former RCW 4.44.440 was a civil procedure statute, not a criminal one. We have previously held that former RCW 4.44.440 cannot apply to criminal cases, so it provides no basis for dismissal of Goins' conviction. We therefore affirm the ruling of the Court of Appeals and uphold Goins' conviction of second degree assault with intent to commit indecent liberties.

FACTS
Goins was convicted as the result of a May 18, 2000, altercation in the bedroom of his victim, Angela Z. On the evening of May 17, 2000, Goins went out drinking with his friend Steve Haworth. In the early morning of May 18, Goins gave Haworth a ride to the apartment of Haworth's friend, Z, where they arrived at approximately 4:00 a.m. Z testified that Goins had been drinking and that Haworth was drunk.
Haworth went to the restroom, leaving Goins and Z alone in the living room. At this time Goins tried to kiss Z. Z testified that she rebuffed Goins and pushed him away. Z then ignored Goins and she dozed off. When Z woke up she found Goins in her bedroom, so she went into the bedroom to investigate. In the bedroom, Goins tried to kiss Z a second time, and did not give up after Z pushed him away again. Goins grabbed Z by her arms and forced her onto the bed. Z fought with Goins and kicked him in an attempt to get away. But Goins overpowered her, pinned her arms and legs, and tried to lift up her shirt. During their fight Z struck Goins in the face and repeatedly pleaded with Goins to stop.
Haworth then entered the bedroom to investigate the commotion. This allowed Z to flee the bedroom and bang on her neighbor's door for help. Z's neighbor, Shari Platt, let Z call the police. Meanwhile, Goins fled the scene.
During the trial, Platt's and Haworth's testimony was consistent with Z's version of the incident. Platt testified that Z had marks on her wrist, neck, foot, and face from the altercation. Haworth also testified that Z looked "roughed up." Verbatim Report of Proceedings (VRP) (Nov. 27, 2000) at 39.
At trial, Goins testified in his own defense. He admitted that he had tried to kiss Z, and that she had rebuffed his advances. He testified that he had followed Z into the bedroom and tried to kiss her a second time, but that this time she "flipped out" and punched him in the face. VRP (Nov. 28, 2000) at 123. Goins claimed that he grabbed Z to keep her from hitting him.
*183 Goins was charged with second degree assault with intent to commit indecent liberties. RCW 9A.36.021(1)(e). The court also submitted a special verdict to the jury to determine if Goins acted with sexual motivation. RCW 9.94A.835. After convicting Goins on the second degree assault charge, the jury was then allowed to consider the special verdict and answered that Goins did not act with sexual motivation. Defense counsel made no objection to the apparently inconsistent verdicts, and Goins was subsequently sentenced. The Court of Appeals affirmed in State v. Goins, 113 Wash.App. 723, 54 P.3d 723 (2002).

ISSUES
(1) Must Goins' conviction be vacated because the jury's general conviction for assault with intent to commit indecent liberties is apparently inconsistent with the jury's special verdict answer that Goins did not act with sexual motivation?
(2) Can former RCW 4.44.440, a civil procedure statute, be applied in criminal cases?

ANALYSIS
Goins assigned error to the apparently irreconcilably inconsistent nature of the general and special verdicts. Goins argues that the inconsistent verdicts violated his rights to due process and therefore his second degree assault conviction should be reversed. In the alternative, Goins argues that former RCW 4.44.440 can be applied in criminal cases, so that the finding of his special verdict should control, thereby dismissing his general conviction for second degree assault. The appellate court may refuse to review any claim of error that was not raised in the trial court. RAP 2.5(a); State v. Scott, 110 Wash.2d 682, 686, 757 P.2d 492 (1988). However, a claim may be raised for the first time on appeal if it amounts to a manifest error affecting a constitutional right. Id. at 687-88, 757 P.2d 492.
As an initial matter, Goins either committed the assault for the purposes of sexual gratification or he did not; the verdicts are irreconcilably inconsistent. Defense counsel did not raise the issue of inconsistent verdicts at trial. Goins, 113 Wash.App. at 725, 54 P.3d 723. This may have been a legitimate strategic decision, so as not to reopen the possibility of Goins' registration as a sex offender. Id. at 744, 54 P.3d 723. Still, this court can address a newly raised error if it is manifest and it affects a constitutional right. State v. McNeal, 145 Wash.2d 352, 357, 37 P.3d 280 (2002). But "an appellant does not establish manifest error merely by showing that jury verdicts appear to be inconsistent." Id. The defendant "has the burden to demonstrate that the alleged error actually affected his ... rights." Id. It is important to note that while truly inconsistent verdicts reveal that the jury somehow erred in applying the jury instructions, that error does not necessarily render the guilty verdict void, nor does it automatically establish prejudice. Id.; see also United States v. Powell, 469 U.S. 57, 65, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984).
Juries return inconsistent verdicts for various reasons, including mistake, compromise, and lenity. Dunn v. United States, 284 U.S. 390, 393-94, 52 S.Ct. 189, 76 L.Ed. 356 (1932); Powell, 469 U.S. at 65, 105 S.Ct. 471. Despite the inherent discomfort surrounding inconsistent verdicts, the United States Supreme Court, in the context of federal crimes, has recognized that a guilty verdict can stand, even where the defendant was inconsistently acquitted of a predicate crime. Powell, 469 U.S. at 68-69, 105 S.Ct. 471; Dunn, 284 U.S. at 392-93, 52 S.Ct. 189. The Powell Court reasoned that an inconsistent guilty verdict "should not necessarily be interpreted as a windfall to the Government at the defendant's expense." Powell, 469 U.S. at 65, 105 S.Ct. 471. It is equally possible that the jury was convinced of the defendant's guilt on the compound offense, and then "through mistake, compromise, or lenity, arrived at an inconsistent [acquittal on the predicate offense.]" Id. (affirming Dunn, 284 U.S. 390, 52 S.Ct. 189). Because one could not be sure which was the verdict that the jury "really meant," an acquittal on a predicate offense did not necessarily require the Court to vacate the conviction. Id. at 68, 105 S.Ct. 471. Even so, the trial and appellate courts provide a safeguard from *184 jury error by independently evaluating whether the guilty verdict rested on sufficient evidence. Id. at 67, 105 S.Ct. 471.
This court adopted the Powell rule in State v. Ng, 110 Wash.2d 32, 46, 48, 750 P.2d 632 (1988). Ng was charged with 13 counts of felony murder for his role in a robbery and shoot out that left 13 people dead. Id. at 34-35, 750 P.2d 632. The jury convicted Ng of 13 counts of the lesser included offense of first degree robbery. Id. at 36, 750 P.2d 632. Ng argued that his robbery convictions were inconsistent with the felony murder acquittals because he did not dispute that the murders occurred. Id. at 45, 750 P.2d 632. Considering the important role of "jury lenity," and problems inherent in second-guessing the jury's reasoning, this court upheld the "`power of a jury to return a verdict of not guilty for impermissible reasons.'" Id. at 48, 750 P.2d 632 (quoting Powell, 469 U.S. at 63, 105 S.Ct. 471). So long as the jury's guilty verdict was supported by sufficient evidence, the court concluded that it would not reverse the guilty verdict simply because it was inconsistent with an acquittal on another count. Id.
Similarly, in 2002 this court upheld a guilty verdict even though it was inconsistent with a special finding that the jury returned on another charge. McNeal, 145 Wash.2d at 359, 37 P.3d 280. In McNeal, the jury convicted the defendant of vehicular assault, a conviction that "implied that [he] was operating his motor vehicle while `under the influence of drugs' at the time he committed the offense." Id. at 356, 37 P.3d 280 (quoting Clerk's Papers). However, in finding that McNeal was also guilty of the vehicular homicide of another victim, the jury made a special finding "that he was not `operating the motor vehicle [] while under the influence of drugs.'" Id. (quoting Clerk's Papers). The jury was aware that McNeal had methamphetamine in his blood at the time of the accident. Id. at 360, 37 P.3d 280. Because the evidence was sufficient to independently support the vehicular assault conviction, the McNeal court refused to hold that the guilty verdict was void. Id. at 361, 37 P.3d 280. The McNeal court reasoned that it was no less problematic to second-guess the jury when a general verdict conflicts with a special verdict than when two general verdicts conflict. Id. at 359, 37 P.3d 280. Therefore, both this court and the United States Supreme Court have recognized that jury convictions on separate counts should not be disturbed, despite inconsistencies, so long as there is sufficient evidence to support the conviction. In all of those cases, respect for the jury's resolution of the case was a central consideration. Id.; Ng, 110 Wash.2d at 48, 750 P.2d 632; Powell, 469 U.S. at 66-67, 105 S.Ct. 471; Dunn, 284 U.S. at 394, 52 S.Ct. 189.
Goins argues that the jury's guilty verdict must be overturned because jury lenity is not a valid explanation for the irreconcilable verdicts. But the jury was aware that the defendant had been out drinking for several hours prior to the assault, which may well have been a mitigating factor. VRP (Nov. 27, 2000) at 21. Moreover, during deliberations, the jury sent a note expressing curiosity as to the consequences of the special verdict. Clerk's Papers (CP) at 33. Although they were never told that a finding of sexual motivation would require the defendant to register as a sex offender, their curiosity indicates an awareness that the special verdict could impact the consequences imposed. See McNeal, 145 Wash.2d at 359 n. 3, 37 P.3d 280 (attributing inconsistent verdicts to jury lenity without making it clear that the jury understood the consequences of the special verdict). Therefore, jury lenity cannot be ignored as a potential reason for the inconsistent verdicts in this case. We are not so quick to abandon the traditional approach of exercising restraint from interfering with jury verdicts. We refrain from second-guessing the jury where lenity provides a plausible explanation for the inconsistency.
Goins argues that this case is more analogous to two appellate cases from 1971 and 1979, and must be distinguished from McNeal because Goins was charged with only a single underlying crime. See State v. Hurley, 4 Wash.App. 781, 483 P.2d 1274 (1971); State v. Wedner, 24 Wash.App. 346, 601 P.2d 950 (1979). Goins' reliance on Hurley and Wedner would have been stronger *185 prior to the McNeal ruling, but McNeal alters the landscape somewhat. The special verdict in this case was separate and distinct from the underlying conviction, and posed only for the purpose of determining whether Goins must be registered as a sex offender. Compare RCW 9A.36.021(1)(e) with RCW 9.94A.835. Moreover, although McNeal involved three separate charges, this court did not expressly limit its holding to situations involving multiple offenses. McNeal, 145 Wash.2d at 359, 37 P.3d 280.
First, the sexual motivation instruction arose from an entirely different statutory scheme than the underlying assault instruction. Id. RCW 9.94A.835 requires the prosecutor to file a special allegation of "sexual motivation" when sufficient evidence is available to support such an allegation. The information in this case reveals that the prosecutor charged the general underlying crime and the special verdict separately, as required by statute. CP at 1. Obviously, the consequence of each charge is different: a guilty verdict on the general charge leads to incarceration, while a special finding of sexual motivation leads to sex offender registration upon release.
Most importantly, in order to successfully achieve a guilty verdict on the allegation of sexual motivation, the prosecution must convince a jury beyond a reasonable doubt both that the defendant is guilty of the general underlying crime and that the assault was perpetuated with a sexual motivation. See RCW 9A.36.021(1)(e); RCW 9.94A.835. In contrast, the legislature has mandated that when a defendant is found guilty of a "sex offense," then sex offender registration is automatically required upon release. RCW 9A.44.130. Indecent liberties is classified as a sex offense; a guilty verdict requires sex offender registration without special findings from the jury. See RCW 9A.44.100, .130. Yet, second degree assault with intent to commit indecent liberties is one step removed; it is not a sex offense and it does not, by itself, invoke the registration requirement. RCW 9A.36.021(1)(e).
It is clear that, because the legislature did not classify second degree assault with the intent to commit indecent liberties as a sex offense, the legislature did not see fit to require every person convicted of that general crime to register as a sex offender upon release. However, Goins' position would have the effect of requiring the underlying general verdict and the special verdict on the special allegation to be inseparable; one cannot be guilty of the underlying offense but not guilty on the special allegation. Such a result flies in the face of the legislature's plain intent to require a separate jury determination on sexual motivation in cases where the underlying crime is not a sex offense as defined in chapter 9A.44 RCW. Therefore, the general guilty verdict here must be treated as entirely separate and distinct from the special verdict.
We conclude that the circumstances of the verdict inconsistency in this case are similar enough to those in McNeal to justify the same result in this case. McNeal, 145 Wash.2d 352, 37 P.3d 280. In both cases, a special verdict contradicted a general guilty verdict. Yet the very nature of inconsistent verdicts is that they are irrationally inconsistent; this alone does not render inconsistent verdicts void. In sum, Goins' arguments for departing from McNeal are unconvincing, especially given the broad language in McNeal suggesting that the ruling applies to inconsistencies between any special finding and general verdict. Id. at 359, 37 P.3d 280.
When inconsistent verdicts call into question a guilty verdict, the reviewing court must verify that the guilty verdict was supported by sufficient evidence. Id. In this case, Goins admitted to "coming on" to the victim and trying to kiss her despite her adamant refusal. VRP (Nov. 28, 2000) at 121-23. The victim testified that Goins tried to lift her shirt and touch her thighs. Id. at 53-56. During the struggle, he forced her onto the bed. Id. at 52. The testimony of two witnesses confirmed the victim's account of the events and her condition after the assault. VRP (Nov. 16, 2000) at 8-11, 25-32. The testimony of all three witnesses establishes that there was sufficient evidence to support the jury's finding that Goins was guilty of assault with intent to commit indecent liberties. Because the general guilty verdict is supported by sufficient evidence, *186 we affirm the Court of Appeals and uphold Goins' conviction.
Goins argues in the alternative that former RCW 4.44.440, a civil statute, can be applied to his criminal matter and therefore his conviction should be dismissed.
Former RCW 4.44.440, special verdict controls, read as follows, "[w]hen a special finding of facts shall be inconsistent with the general verdict, the former shall control the latter, and the court shall give judgment accordingly." However, former RCW 4.44.440 was not a criminal statute, it was a civil statute. This court has previously discussed former RCW 4.44.440 in conjunction with a criminal case, but we have never applied it to a criminal verdict. See State v. Robinson, 84 Wash.2d 42, 45, 523 P.2d 1192 (1974). This court further considered this issue in McNeal, where the dissent argued for applying former RCW 4.44.440 to criminal cases. However, the majority in McNeal rejected this argument and refused to apply former RCW 4.44.440 to that criminal case. McNeal, 145 Wash.2d at 358 n. 2, 37 P.3d 280. In accordance with McNeal we hold that former RCW 4.44.440 cannot apply in criminal cases where the special and general verdicts are inconsistent.

CONCLUSION
This court has previously held, in Ng, 110 Wash.2d 32, 750 P.2d 632, and McNeal, 145 Wash.2d 352, 37 P.3d 280, that the simple fact of verdict inconsistency does not require that we vacate a guilty verdict. Because jury lenity is a plausible explanation for the jury's apparent inconsistency here, we should not second-guess the jury. The general conviction can be upheld because the evidence presented at trial was sufficient to sustain the jury's conviction on second degree assault. McNeal, 145 Wash.2d at 361, 37 P.3d 280.
The special verdict in this case is separate and distinct from the underlying general conviction. Compare RCW 9A.36.021(1)(e) with RCW 9.94A.835. The legislature's plain intent is that if the underlying crime is not a sex offense as defined in chapter 9A.44 RCW, then the special verdict will supplement a general conviction in order to determine if sex offender registration is warranted. This separate determination is made by the jury after the general determination of guilt or innocence. Because the general verdict and the special verdict are separate and distinct, it is not our place to second-guess the jury's decision to render the two apparently inconsistent verdicts.
Finally, former RCW 4.44.440 was a civil procedure statute, not a criminal one. As we previously held in McNeal, 145 Wash.2d at 360 n. 2, 37 P.3d 280, former RCW 4.44.440 cannot apply to criminal cases and therefore provides no basis for the dismissal of Goins' conviction.
We therefore affirm the ruling of the Court of Appeals and uphold Goins' conviction of second degree assault with intent to commit indecent liberties.
JOHNSON, IRELAND, BRIDGE, and FAIRHURST, JJ., concur.
MADSEN, J. (concurring).
Although I agree with the majority that the conviction in this case should be affirmed, I would do so because the two verdicts in this case are not inconsistent. Accordingly, I respectfully concur in the majority.

Analysis
The majority states on page 183 that the verdicts are irreconcilably inconsistent, but then states on page 185 that the two verdicts can be interpreted as separate and consistent. Instead, I would simply hold that the two verdicts rendered by the jury in this case are not inconsistent. As the majority correctly notes, the two verdicts are independent of each other, they serve different purposes, and the language in the two verdicts is different based upon differences in the language of the relevant statutes.
In addition, and more importantly, the jury was not required to determine whether the State proved the elements of indecent liberties, including whether the defendant engaged in a "touching of the sexual or other intimate parts of a person done for the purposes of gratifying sexual desire of either *187 party of a third party," (RCW 9A.44.010(2)) because Matthew Goins was not charged with the crime of indecent liberties. Rather, in returning a guilty finding on assault in the second degree, the jury needed only to find that Goins assaulted his victim with the intent to commit indecent liberties. Had the State been required to prove that Goins actually committed the crime of indecent liberties, the claim of irreconcilable verdicts perhaps would have been debatable. Instead, it was not necessary for the jury to find that Goins actually touched his victim within the definition of sexual contact. Of course, if Goins had been charged with indecent liberties, the second verdict relating to sexual motivation would have been unnecessary because sex offender registration is triggered by a conviction for indecent liberties.
Even where a general verdict and a special finding are seemingly inconsistent, a special finding will not control a general verdict unless the two are irreconcilably inconsistent. State v. Holmes, 106 Wash.App. 775, 779, 24 P.3d 1118 (2001); State v. Baruso, 72 Wash.App. 603, 616, 865 P.2d 512 (1993); see also State v. Peerson, 62 Wash.App. 755, 765, 816 P.2d 43 (1991). Where a special verdict[1] is susceptible of two constructions, one of which will support the general verdict and the other of which will not, the court will give such construction as will support the general verdict. Holmes, 106 Wash.App. at 779, 24 P.3d 1118; State v. Robinson, 84 Wash.2d 42, 45, 523 P.2d 1192 (1974). In Holmes, the jury found in the general verdict that the defendant was guilty of first degree robbery because he had been armed with a deadly weapon. 106 Wash.App. at 778-79, 24 P.3d 1118. However, the jury rejected the deadly weapon sentence enhancement. Id. at 778, 24 P.3d 1118. The court found that the two verdicts were reconcilable because the definition of deadly weapon for the general verdict was different from the one for the special finding. Id. at 779-80, 24 P.3d 1118; RCW 9A.04.110(6); former RCW 9.94A.125 (currently RCW 9.94A.602, recodified by LAWS OF 2001, ch. 10, § 6). In that case, the jury was instructed that a deadly weapon for purposes of the robbery charge was "`any weapon, device, instrument, or article, which under the circumstances in which it is used, ... is readily capable of causing death or substantial bodily injury.'" 106 Wash.App. at 780, 24 P.3d 1118 (emphasis omitted) (quoting Clerk's Papers). However, the instruction defining deadly weapon for the sentencing enhancement provided, "`an implement or instrument that has the capacity to inflict death and, from the manner in which it is used, is likely to produce or may easily produce death.'" Id. The court pointed out that the jury could have reasonably concluded under the circumstances that the weapon the defendant had been carrying, a utility knife, might be "`readily capable of causing... substantial bodily injury'" but it was not "`likely to produce'" or would not "`easily produce death.'" Id. at 780, 24 P.3d 1118. Thus, the jury could conclude that the knife was a deadly weapon for the purpose of finding the defendant guilty of the first degree robbery but not a deadly weapon for the purpose of enhancing the sentence under the special finding. Holmes, 106 Wash.App. at 779-80, 24 P.3d 1118.
Here, as in Holmes, the difference in language between the verdict forms as well as the fact that the State was not required to prove that Goins committed the crime of indecent liberties, demonstrate that the verdicts are easily reconcilable.
CHAMBERS, J., concurs.
SANDERS, J. (dissenting).
Two issues are presented: (1) whether the conviction of a man charged with the single offense of second degree assault with intent to commit indecent liberties must be reversed when the jury finds by special verdict that an essential element of that offense is not present; and (2) whether former RCW 4.44.440 (Code of 1881, § 243), amended by Laws of 2003, ch. 406, § 24,[1] applies to criminal cases. I answer yes to both. But before *188 I explain my reasons I dispose of any contention these verdicts might be viewed as consistent with each other.

I. The Verdicts are Inconsistent
Matthew Goins was convicted by general verdict of second degree assault with the intent to commit indecent liberties; however, by subsequent special verdict the jury specifically found Goins was not sexually motivated. The majority acknowledges these verdicts are irreconcilably inconsistent with each other. Majority at 183 ("[T]he verdicts are irreconcilably inconsistent."). The concurrence then opines, without misgiving, the verdicts are consistent with each other, reasoning "the jury was not required to determine whether the State proved the elements of indecent liberties ... because Matthew Goins was not charged with the crime of indecent liberties." Concurrence at 186.
The elements of second degree assault as defined by RCW 9A.36.021(1)(e), the subsection pertinent to Goins' case, are (1) assault and (2) intent to commit a felony. The named felony was indecent liberties. Clerk's Papers (CP) at 16; RCW 9A.44.100(2) (classifying indecent liberties as a felony). Intending to commit indecent liberties requires an intent to have "sexual contact" with the victim, RCW 9A.44.100(1), which occurs only when the perpetrator "touch[es] ... the sexual or other intimate parts of a person ... for the purpose of gratifying sexual desire of either party or a third party," RCW 9A.44.010(2). "Intent" is statutorily defined as "act[ing] with the objective or purpose to accomplish a result which constitutes a crime." RCW 9A.08.010(1)(a). To intend to commit indecent liberties, therefore, Goins must have acted to achieve the result of touching the sexual or other intimate parts of his alleged victim, Angela Z., to gratify his sexual desire.[2]
The concurrence apparently takes the view the jury did not have to find Goins acted to gratify his sexual desire. If such were the case, then a man who punches a woman in the breast[3] would be guilty of assault with intent to commit indecent liberties, regardless of whether he intended to act with a sexual purpose. Certainly the man would be guilty of assault, as he unlawfully touched the woman with criminal intent. See State v. Aumick, 126 Wash.2d 422, 426 n. 12, 894 P.2d 1325 (1995). But one cannot reasonably claim the man acted with the intent to commit indecent liberties.
Though the special verdict asked the jury whether Goins "commit[ted] the crime with sexual motivation," CP at 34 (emphasis added), the instructional definition of "[s]exual motivation" explicitly required a finding that Goins acted "for the purpose of his ... sexual gratification," CP at 22. Thus, the jury was asked for the purposes of both verdicts whether Goins acted "for the purpose of his ... sexual gratification." Id.; see also CP at 20 (defining "sexual contact" with the language of RCW 9A.44.010(2)). The jury answered yes in the general verdict but no in the special verdict. Either Goins committed assault with sexual motivation or he did not. It cannot be both. Consequently, the guilty verdict of the crime of second degree assault with intent to commit indecent liberties cannot consistently coexist with a simultaneous finding that Goins acted without sexual motivation.

II. Inconsistent Verdicts in Cases Where Only One Count Is At Issue Cannot Stand
Because the verdicts are clearly inconsistent, the remaining issue is the appropriate remedy. The majority opines Goins can still be found guilty of second degree assault even though an essential element of that crime *189 (sexual motivation) was affirmatively found by the jury not to be existent. See majority at 185 [T]he very nature of inconsistent verdicts is that they are irrationally inconsistent; this alone does not render inconsistent verdicts void."). This conclusion belies the elementary rule in constitutional jurisprudence that each element of a crime must be found by a unanimous jury beyond a reasonable doubt. U.S. CONST. amends. VI, XIV; CONST. art. I, § 21; Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); In re Winship, 397 U.S. 358, 362, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); State v. Crediford, 130 Wash.2d 747, 759, 927 P.2d 1129 (1996); State v. Petrich, 101 Wash.2d 566, 569, 683 P.2d 173 (1984). Here the jury found by special verdict that an essential element of second degree assault, namely "intent to commit a felony," RCW 9A.36.021(1)(e), was not proved to the jury beyond a reasonable doubt.
Crucial to the majority's holding is its classification of the special verdict as "separate and distinct from the underlying conviction." Majority at 185. Yet the jury could not find Goins' intent to have sexual contact unless it found Goins acted with sexual motivation. See supra at 188. Though the majority certainly is correct that the legislature did not intend every person convicted of second degree assault to be labeled as a sex offender, when the second degree assault is predicated on a finding of sexual motivation (as is required for indecent liberties), the jury must find that element in order to convict the defendant of that crime. Without that proof, we cannot impute that finding into the jury room under the montage of "sufficient evidence" to find Goins acted with sexual motivation. Majority at 184, 185.
Nor can I agree with the majority that State v. McNeal, 145 Wash.2d 352, 37 P.3d 280 (2002), mandates us to rubber stamp a tainted jury verdict. The underpinning of McNeal and the case upon which it relied, State v. Ng, 110 Wash.2d 32, 48, 750 P.2d 632 (1988), was "`jury lenity.'" McNeal, 145 Wash.2d at 358, 37 P.3d 280 (quoting Ng, 110 Wash.2d at 48, 750 P.2d 632). The majority's holding rests on our restraint from "second-guessing the jury where lenity provides a plausible explanation for the inconsistency." Majority at 184.
However both McNeal and Ng involved inconsistent verdicts with respect to multiple charges. McNeal, 145 Wash.2d at 356, 359, 37 P.3d 280; Ng, 110 Wash.2d at 35, 45, 47-48, 750 P.2d 632. Jury lenity is undeniably a power of "utmost importance," McNeal, 145 Wash.2d at 366, 37 P.3d 280 (Sanders, J., dissenting), and is applicable where a defendant faces multiple opportunities for punishment. Indeed the majority recognizes the authority for its conclusion stands for the rule that "jury convictions on separate counts should not be disturbed, despite inconsistencies, so long as there is sufficient evidence to support the conviction." Majority at 184 (emphasis added) (citing United States v. Powell, 469 U.S. 57, 66-67, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984); Dunn v. United States, 284 U.S. 390, 394, 52 S.Ct. 189, 76 L.Ed. 356 (1932); McNeal, 145 Wash.2d at 359, 37 P.3d 280; Ng, 110 Wash.2d at 48, 750 P.2d 632). Yet where a defendant is charged with but a single crime, leniency becomes black and white: either the jury is lenient and acquits the defendant or the jury is not lenient and convicts the defendant.[4]
Accordingly, Goins' second degree assault conviction must be reversed. It is true under the facts of this case that Goins received a lesser included offense instruction, which allowed the jury to convict him of fourth degree assault if it could not unanimously convict him of second degree assault. CP at 23. Instruction 14 defined fourth degree assault as "assault not amounting to assault in the second degree." Id. at 24. Instruction 15, the "to convict" instruction on fourth degree assault, supplied the same elements as the "to convict" instruction for second degree assault except the element of "intent to commit Indecent Liberties." Compare id. *190 at 16 (second degree assault "to convict" instruction) with id. at 25 (fourth degree assault "to convict" instruction). But the jury convicted Goins of second degree assault and did not answer the general verdict form for fourth degree assault.
Thus, Goins could still face a retrial on the fourth degree assault charge on remand.[5] But should he have to face a retrial on the second degree assault charge? I believe former RCW 4.44.440 unequivocally answers that question.

III. Special Verdicts Control General Verdicts
Former RCW 4.44.440 clearly dictates that a special finding controls over a general verdict. It states, "When a special finding of facts shall be inconsistent with the general verdict, the former shall control the latter, and the court shall give judgment accordingly." Former RCW 4.44.440 (emphasis added).
The majority refuses to follow former RCW 4.44.440, claiming it is civil in nature, inapplicable to criminal proceedings, see majority at 186, even though the text of that statute allows no such distinction. The majority asserts State v. Robinson, 84 Wash.2d 42, 523 P.2d 1192 (1974), and McNeal, 145 Wash.2d 352, 37 P.3d 280, support its conclusion. But they don't.
In Robinson the defendant was a police officer convicted of bribery. Robinson, 84 Wash.2d at 42-43, 523 P.2d 1192. When the jury returned the general verdict to the judge, it attached a note which indicated the jurors could "only find him guilty of the crime of accepting drinks while in uniform." Id. at 43 n. 1, 523 P.2d 1192. The court declined to apply former RCW 4.44.440, not because the statute applied only to civil matters, but rather because the note submitted by the jury was not a "special verdict" or "special finding[] of fact" as specified in the statute, and because juries are not permitted to make special findings on their own initiative. Id. at 45, 523 P.2d 1192.
Like Robinson, the court in McNeal declined to apply former RCW 4.44.440 because the facts in that case did not support the statute's application:
Even assuming that RCW 4.44.440, a civil procedure statute, applies to criminal cases, it is clear that that statute does not control here. A plain reading of the statute reveals that "a" special finding controls only "the" general verdict on the charge to which it relates. This does not mean, as the dissent asserts, that a special finding to one charge controls a verdict on a separate charge. Had the legislature such an intention, it would likely have used the phrase "general verdicts" rather than the phrase "the general verdict."
McNeal, 145 Wash.2d at 358 n. 2, 37 P.3d 280. Here we have one general verdict, precisely the fact McNeal found necessary to invoke former RCW 4.44.440. Even though I viewed the case as controlled by former RCW 4.44.440, see id. at 369-70, 37 P.3d 280 (Sanders, J., dissenting), the majority's rejection of my conclusion on grounds different from the statute's applicability to criminal proceedings does not mean the issue is resolved, and we recently held such an approach was erroneous. See State v. Smith, 150 Wash.2d 135, 147-48, 75 P.3d 934 (2003) (noting it is error to view an argument in a dissenting opinion as rejected by a majority of this court because "the majority may base its holding on a completely separate analysis and may not even consider those arguments addressed by the dissent"), cert. denied, ___ U.S. ___, 124 S.Ct. 1616, 158 L.Ed.2d 256 (2004). In Smith the court held State v. *191 Manussier, 129 Wash.2d 652, 921 P.2d 473 (1996), was not controlling merely because the arguments raised by the dissent, see id. at 685-97, 921 P.2d 473 (Madsen, J., dissenting), were not adopted by a majority of the court. Smith, 150 Wash.2d at 147-48, 75 P.3d 934. Viewing McNeal as controlling in this case to the effect that former RCW 4.44.440 does not apply to criminal cases is just as erroneous as it was for the Court of Appeals in Smith to view Manussier as controlling authority there. See Smith, 150 Wash.2d at 147-48, 75 P.3d 934; see also Natasha Shekdar Black, A is not A: Washington's Unconstitutional Law of Single-Consent, Single-Defendant Inconsistent Verdicts in State v. Goins, 78 Wash. L.Rev. 557, 577 (2003) ("Until Goins, Washington courts had not determined whether section 4.44.440 applied to criminal proceedings.").
Quite the opposite of holding former RCW 4.44.440 completely inapplicable to criminal cases, this court has repeatedly held that the civil rules are applicable in criminal cases if the criminal rules are silent on the issue at hand. State v. Cronin, 130 Wash.2d 392, 397, 923 P.2d 694 (1996) (CR 5); State v. Clark, 129 Wash.2d 805, 815, 920 P.2d 187 (1996); State v. Hackett, 122 Wash.2d 165, 170, 857 P.2d 1026 (1993); State v. Gonzalez, 110 Wash.2d 738, 744, 757 P.2d 925 (1988).
The criminal rules do not address the remedy where a special verdict is irreconcilable with a general verdict. The only criminal rule that is arguably relevant is CrR 6.16(b), which states, "When a special finding is inconsistent with another special finding or with the general verdict, the court may order the jury to retire for further consideration." (Emphasis added.) Notably absent from CrR 6.16(b) is the mandatory language which exists in former RCW 4.44.440. Compare CrR 6.16(b) (use of the word "may") and former RCW 4.44.440 (use of the word "shall"). Fundamental to statutory construction is the doctrine that "shall" is construed as mandatory language and "may" is construed as permissive language. Accord Rios v. Dep't of Labor & Indus., 145 Wash.2d 483, 501 n. 11, 39 P.3d 961 (2002) (construing "shall" as "mandatory language"); Petrarca v. Halligan, 83 Wash.2d 773, 776, 522 P.2d 827 (1974) (construing "may" as "permissive language"). And we use statutory construction principles to construe criminal court rules. City of Seattle v. Guay, 150 Wash.2d 288, 300, 76 P.3d 231 (2003).
Thus, contrary to former RCW 4.44.440 which mandates the court to give judgment in accordance with the special verdict, CrR 6.16(b) merely vests the judge with discretion to order the jury to continue deliberating. CrR 6.16(b) does not address the appropriate remedy for inconsistent verdicts once rendered. That situation is addressed only by former RCW 4.44.440.
Accordingly, the jury's special finding that Goins did not act with sexual motivation controls the general verdict of guilty (which is required for indecent liberties), and his second degree assault conviction must be reversed.[6]
I therefore dissent.
ALEXANDER, C.J. (concurring in the dissent).
I concur in Justice Sanders' dissent to the extent that he concludes the jury's general verdict and its special finding are irreconcilable, thus requiring the reversal of Matthew Goins' conviction. I write separately because *192 I believe that in State v. Hurley, 4 Wash.App. 781, 483 P.2d 1274, review denied, 79 Wash.2d 1005 (1971) Division Three of the Court of Appeals decided this issue persuasively. In addition, I wish to state my view that the proper remedy here is a remand for a new trial.
In Hurley, the defendant was charged with robbery, which required the jury to find that the defendant "`was armed with a deadly weapon.'" Hurley, 4 Wash.App. at 782, 483 P.2d 1274 (emphasis omitted). The jury was also asked to make a special finding of whether the defendant was "armed with a deadly weapon at the time of the occurrence," which was "solely for the use of the Board of Prison Terms and Paroles in fixing a minimal term of confinement" as required by former RCW 9.95.015 (LAWS OF 1961, ch. 138, § 1). Id. at 783, 782, 483 P.2d 1274. The Hurley jury found the defendant guilty of robbery "but answered the special interrogatory in the negative." Id. at 783, 483 P.2d 1274.
The Court of Appeals held in Hurley that when there is a conflict within the same count, between a general verdict and a special finding that is required by a separate statute for a distinct purpose, a conviction will not stand. The court, therefore, reversed the robbery conviction and remanded for a new trial.
Because Hurley is indistinguishable from the present case and, I believe, decided correctly, I would have us follow it. I, therefore, dissent. Unlike Justice Sanders, however, I would remand for a new trial on the second degree assault charge, the remedy imposed in Hurley.
NOTES
[1] A special verdict here means a special finding.
[1] The 2003 amendment to former RCW 4.44.440 substantially rewrote the section. However Goins' trial was held prior to the legislative enactment and we must evaluate his proceedings under former RCW 4.44.440.
[2] While "sexual contact" occurs when contact with another's sexual or intimate parts occurs "for the purpose of gratifying sexual desire of either party or a third party," RCW 9A.44.010(2), the only person whose sexual gratification was at issue was Goins. Nothing in the record indicates Goins acted to gratify Angela Z.'s sexual desire, much less the only third party presentwitness Steve Haworth. The record demonstrates Haworth entered the room only after the alleged assault took place and after Haworth had spent much of the time being sick from intoxication.
[3] See In re Welfare of Adams, 24 Wash.App. 517, 519, 601 P.2d 995 (1979) (noting a woman's breasts can be deemed "`sexual or other intimate parts'" as a matter of law).
[4] I pause to recognize that one commentator recently criticized the result reached by the Court of Appeals below that the majority now adopts with open arms. See Natasha Shekdar Black, A is not A: Washington's Unconstitutional Law of Single Count, Single Defendant Inconsistent Verdicts in State v. Goins, 78 WASH. L.REV. 557, 582 (2003) ("[C]oncerns of jury lenity do not justify extending the Ng and McNeal holdings to the single-count, single-defendant context.").
[5] This situation differs from that where a jury convicts a defendant of a lesser offense which is later reversed, in which case the defendant's right against double jeopardy would prevent the State from charging the defendant with the more serious offense of which the jury acquitted him or her. See, e.g., Green v. United States, 355 U.S. 184, 189-90, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957) (defendant unconstitutionally faced double jeopardy for first degree murder charge after successfully appealing his second degree murder conviction when jury at original trial had alternative of convicting him of first degree murder). Here the jury never returned a verdict on the fourth degree assault charge, so Goins' jeopardy with respect to the fourth degree assault charge never ended. Accord Justices of Boston Mun. Court v. Lydon, 466 U.S. 294, 308-09, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984).
[6] Chief Justice Alexander correctly recognizes State v. Hurley, 4 Wash.App. 781, 483 P.2d 1274, review denied, 79 Wash.2d 1005 (1971), is indistinguishable from the present case. There the to convict instruction erroneously added an element that defendant Hurley was required to be "`armed with a deadly weapon'" at the time of the charged offense, robbery. Id. at 782, 483 P.2d 1274. The prosecution had submitted the instruction, so it became the law of the case. Id. at 782-83, 483 P.2d 1274. However a special interrogatory to determine the appropriate sentence was also submitted to the jury, asking whether Hurley was armed with a deadly weapon at the time of the offense. Id. The jury answered the interrogatory in the negative. Id. at 783, 483 P.2d 1274. The court reversed the convictions as the verdicts were inconsistent. Id. The Hurley court refused to grant Hurley an acquittal by way of judgment notwithstanding the verdict, concluding at most the verdicts canceled out each other and resulted in a mistrial. Id. at 783-84, 483 P.2d 1274. For the previously mentioned reasons I nonetheless maintain former RCW 4.44.440 controls the disposition of this case, as evidenced by our cases subsequent to Hurley, which considered the applicability of the statute to criminal cases.